UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| 1. DAVID L. KENEIPP, | ) | CIVIL ACTION NO. |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| 2. MVM, INC., and | ) | |
| 3. LORETTA LYNCH, Attorney | ) | |
| General of the United States, | ) | |
| Defendants. | ) | A JURY IS DEMANDED |

## ORIGINAL COMPLAINT

If David Keneipp had been judged on the quality of his work, he would still be serving as a Court Security Officer guarding the federal judiciary of the Northern District of Oklahoma. Although he performed his job as a Court Security Officer with distinction, he lost his job because of disability discrimination.

### PARTIES

1. The plaintiff David L. Keneipp is an individual who resides in Tulsa, Tulsa County, Oklahoma.

2. The defendant MVM, Inc. is a California corporation doing business in the Northern District of Oklahoma, and may be served with process by serving its registered agent, Corporation Service Company, 115 SW 89th Street, Oklahoma City, Oklahoma 73139-8511.

3. The defendant Loretta Lynch is the United States Attorney General and may be served with process at her business address, Office of the Attorney General, Department of Justice, 950 Pennsylvania Ave., N.W., Washington, D.C. 20530-0001. A copy of this complaint is also served on the United States Attorney for the Northern District of Oklahoma.

### JURISDICTION

4. This case is brought under the Americans with Disabilities Act, 42 U.S.C. § 12101 et seq. and the Rehabilitation Act of 1973, 29 U.S.C. § 791 et seq. This Court has jurisdiction of this case according to 28 U.S.C. § 1331 and 28 U.S.C. § 1343. This action is not related to any other case filed in this court.

5. Venue is invoked pursuant to 28 U.S.C. § 1391.

### STATEMENT OF THE PLAINTIFF'S CASE

6. The plaintiff, David Keneipp, has more than 45 years of experience in law enforcement and security and is well qualified to protect the judiciary. He began his career in the U.S. Army, serving a two year term and receiving an honorable discharge. He then worked as a Texas Highway Patrolman and as a U.S. Border Patrol Agent. In 1975 he was promoted to Special Agent Criminal Investigator for the Department of the Treasury, U.S. Customs Service. Mr. Keneipp's supervisors recognized his talents and increased his responsibilities and authority until he was in charge of all Customs criminal investigative matters in the southern half of New Mexico. As Resident Agent in Charge, Mr. Keneipp directed multiple Customs offices, managed multimillion dollar budgets, and dealt with all levels of supervision and management in various federal, state, and local agencies.

7. After nearly 20 years with the U.S. Customs Service, Mr. Keneipp moved to Oklahoma and applied his law enforcement experience to Court Security. In that capacity, h e served as both a Court Security Officer and a Lead Court Security Officer guarding the federal courthouse in Tulsa, Oklahoma. At the end of his career in 2014, he was employed by MVM, which contracted with the United States Marshals Service (USMS) to provide security to the federal judges, personnel and visitors to the Tulsa federal building.

8.      MVM and the USMS required Mr. Keneipp to submit to an annual fitness for duty examination as a condition of his employment, which he passed every year. There was never any issue whatsoever regarding Mr. Keneipp's qualifications for the job, and his work performance always demonstrated his ability to perform his essential job functions. In 2011, Mr. Keneipp had surgery to correct sciatica, which had been causing him back pain. The surgery was successful and Mr. Keneipp returned to work with no restrictions and with no further problems with back pain.

9.      During Mr. Keneipp's annual physicals in 2012 and 2013, a mild abnormality was noted in his EKG. The USMS demanded that Mr. Keneipp have a cardiologist perform an echocardiogram and a stress test to confirm that heart problems did not interfere with his fitness for duty. Mr. Keneipp's cardiologist performed echocardiograms and pharmacological stress tests in 2013 and 2014. These tests confirmed that Mr. Keneipp had no serious heart conditions and was fit for duty. The USMS refused to accept the results of these stress tests and instead demanded that Mr. Keneipp undergo a Bruce protocol treadmill stress test. Mr. Keneipp's cardiologist, Dr. Good, declined to perform a treadmill stress test, as the pharmacological test was diagnostically equivalent and he was concerned that the treadmill test carried a small risk of aggravating the back issues that Mr. Keneipp had had before his 2011 surgery. Dr. Good confirmed for the USMS that Mr. Keneipp was able to undergo strenuous physical exertion and perform the functions of his job, up to and including subduing violent persons and responding to strenuous emergency situations.

10.     Rather than accept Dr. Good's conclusion that Mr. Keneipp was fit for duty, the USMS took his report and blatantly misrepresented it. Dr. Good had plainly stated that in evaluating Mr. Keneipp's heart, he declined to perform the treadmill stress test because of his

perception that the treadmill test carried a small risk to Mr. Keneipp which the pharmacological test did not. Yet the USMS interpreted Dr. Good's statement as a conclusion that Mr. Keneipp's sciatica *prevented him* from performing physical exertion. The reviewing USMS physician decided that Mr. Keneipp was "not medically qualified" and stated that "According to his personal doctor, the CSO's back pain precludes his ability to run, and calls into serious question his ability to defend himself against attack, physically control violent, irrational individuals or crowds, or remove individuals from danger." Yet neither Dr. Good nor any of plaintiff's physicians had said anything of the sort. Dr. Good's conclusion was that Mr. Keneipp was entirely fit for duty and had no cardiac issues that would prevent him from exerting himself strenuously in whatever manner he needed to on the job. In spite of the obvious problems with the USMS's conclusion that Mr. Keneipp was not medically qualified, MVM complied with the USMS demand and terminated Mr. Keneipp on October 2, 2014.

11. The USMS rationale for disqualifying Mr. Keneipp was not just false on its face, it was also totally illogical and inconsistent with USMS medical review practices. The USMS concluded from Dr. Good's report that Mr. Keneipp's back pain prevented him from performing the essential functions of his job. Yet Dr. Good is a cardiologist, not a specialist in back pain or sciatica. He made no evaluation of Mr. Keneipp's back and he was never asked to do so. His only reference to Mr. Keneipp's back was in regard to the choice of cardiac stress test and was not an evaluation of Mr. Keneipp's back. Yet the USMS treated the statement as dispositive. This was also a startling departure from USMS medical evaluation practices. The USMS routinely requires CSOs to visit specialists and undergo testing and examinations whenever potential medical concerns arise. This is precisely what happened when Mr. Keneipp's EKG showed a mild abnormality: he was directed to Dr. Good, a cardiologist, for further testing. Yet

when Dr. Good cited Mr. Keneipp's sciatica as the reason for his choice of cardiac test, the USMS did not ask Mr. Keneipp to follow up with his Orthopedic Surgeon, it simply ordered Mr. Keneipp's termination. Mr. Keneipp had not had problems with back pain since his surgery in 2011, he had performed his job successfully without any restrictions since the surgery, and no doctor, let alone a back specialist, had ever suggested that his back in any way affected his ability to perform his job. Indeed, Mr. Keneipp's back surgeon had confirmed for the USMS after the 2011 surgery that Mr. Keneipp was fully able to perform the essential functions of his job, engage in vigorous exercise and perform aggressive law enforcement functions. This assessment of Mr. Keneipp's back had never been changed or contradicted—certainly not by Mr. Keneipp's job performance. Yet the USMS disqualified him on the basis of a single wildly misconstrued remark from a non-specialist, and gave him no opportunity to provide additional information or contest the disqualification. The USMS improperly regarded Mr. Keneipp as damaged goods and was willing to seize upon the most baseless rationale to remove him. MVM accepted the USMS direction and terminated him, despite knowing that Mr. Keneipp had performed admirably on the job.

## DISABILITY DISCRIMINATION

12. The plaintiff is a qualified individual who performed his job as Court Security Officer with distinction, yet the defendants discriminated against him based upon a disability (his history of sciatica and/or abnormal EKG) or because the defendants regarded him as having a disability. See 42 U.S.C. § 12102(1)(C). Even though Defendants knew that Mr. Keneipp was and is eminently qualified to continue working as CSO, they terminated him because of their false perception that he was substantially limited in his cardiac and/or spine function. The USMS' conduct violated the Rehabilitation Act, which prohibits discrimination in employment

on the basis of disability. The USMS and MVM further violated the Rehabilitation Act and the ADA, respectively, by demanding that Mr. Keneipp submit to a treadmill stress test and refusing to accept the results of a pharmacological stress test. Defendants could not legally require such a medical test, as it did here, unless such tests are job related and justified by business necessity, which the demand for a treadmill stress test certainly was not. See 42 U.S.C. § 12112(d)(4)(A). This demand for a treadmill stress test was additionally an unlawful selection criteria in that it tends to screen out individuals with disabilities. See 42 U.S.C. § 12112(b)(6).

13. MVM additionally violated the Americans with Disabilities Act by subjecting Mr. Keneipp to discrimination from the USMS. The law defines unlawful discrimination as "participating in a contractual or other arrangement or relationship that has the effect of subjecting a covered entity's qualified applicant or employee with a disability to the discrimination prohibited by this subchapter." 42 U.S.C. § 12112(b)(2). MVM cannot contract out of its obligations under the disability law by allowing the government to make a decision that is illegal under the ADA and then blindly going along with it.

14. The plaintiff timely filed a charge of discrimination and initiated EEO counseling to challenge the disability discrimination he suffered from defendants. More than 180 days have passed since he filed a formal complaint of discrimination. He requested a right to sue from the Equal Employment Opportunity Commission on his charge of discrimination against MVM and such right to sue letter has been issued. Plaintiff timely files this lawsuit to vindicate his rights. Plaintiff has properly exhausted his administrative remedies.

## DAMAGES

15. The damages suffered by the plaintiff include lost wages and benefits as well as compensatory damages for the injuries suffered at the hands of the defendants, including, but not limited to, mental anguish.

16. Further, because MVM's actions were of the sort that render the imposition of exemplary damages appropriate, the plaintiff is entitled to an award of these damages, which he seeks.

## RELIEF REQUESTED

The plaintiff asks this court to enter a judgment:

1. Declaring that the acts and practices complained of in this Complaint are in violation of the Americans with Disabilities Act and the Rehabilitation Act of 1973;

2. Enjoining and permanently restraining these violations of law;

3. Directing the defendants to pay the plaintiff actual and compensatory damages that he suffered, past and future;

4. Directing the defendants to reinstate plaintiff, or in the alternative, award him front pay;

5. Directing the defendants to pay plaintiff exemplary damages for its conduct in an amount as yet to be ascertained;

6. Awarding plaintiff pre-judgment interest on the amounts owed at the maximum rate allowed by law;

7. Awarding plaintiff the costs of this action, together with reasonable attorneys' fees and expert witness fees;

8. Awarding plaintiff post-judgment interest on the amount of judgment until paid at the maximum rate allowed by law; and

9. Awarding plaintiff such other relief, legal or equitable, as may be warranted.

Respectfully submitted,

/s/ Michael D. McGrew
Michael D. McGrew, OBA #13167
400 North Walker Avenue, Suite 115
Oklahoma City, Oklahoma 73102
(405) 235-9909 – Telephone
(405) 235-9929 – Fax
mcgrewslaw@yahoo.com

JOHN GRIFFIN, JR.
Texas Bar No. 08460300
Michael J. Neuerburg
Texas Bar No. 24075562
203 North Liberty Street
Victoria, Texas  77901
(361) 573-5500 – Telephone
(361) 573-5040 – Fax
jwg@lawmgk.com
mjn@lawmgk.com

Katherine L. Butler
Texas Bar No. 03526300
1007 Heights Boulevard
Houston, Texas  77008
(713) 526-5677 – Telephone
(888) 370-5038 – Fax
kathy@butlerharris.com

8