IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| DAVID L. KENEIPP, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 15-CV-565-JED |
| | ) | |
| MVM, INC., | ) | |
| | ) | |
| Defendant. | ) | |

## OPINION AND ORDER

Before the Court are the Motion for Partial Summary Judgment (Doc. 36) filed by plaintiff, David L. Keneipp, and the Motion for Summary Judgment (Doc. 34) filed by the defendant, MVM, Inc. Because the motions share common factual and legal arguments, the Court will consider them in one order.

**I.      Background**

MVM terminated Mr. Keneipp's employment on October 2, 2014. Keneipp asserts that the termination was in violation of the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101, because MVM terminated him based upon a perceived disability, while he was completely qualified to continue in his job as a Court Security Officer (CSO) for the federal court.

MVM contracts with the United States Marshals Service (USMS) to provide security services to federal judges, court personnel, and visitors. Until 2014, when it terminated Mr. Keneipp, MVM employed him as a CSO to provide security to the Tulsa federal building. Based on its contract with USMS, MVM required Keneipp to submit to an annual fitness for duty examination. USMS contracts with the Federal Occupational Health agency (FOH) to review CSO medical records to determine whether a CSO meets the USMS's physical and medical standards.

Mr. Keneipp completed and submitted a CSO Medical Review Form at the request of USMS. The FOH reviewed the Form and determined that he did not meet the CSO physical and medical standards. The FOH then advised USMS that Keneipp was "not medically qualified to perform the essential functions of the job." (Doc. 36-8). The physician stated that Keneipp did not meet the standards because he suffered from serious back pain and sciatica. USMS sent a letter to MVM stating, "[i]t has been determined that Mr. Keneipp must discontinue performing under the contract. Mr. Keneipp does not meet the CSO medical standards required by the contract." (Doc. 36-8). MVM terminated Keneipp by letter the following day, stating that the letter "is to advise you that your employment with MVM, Inc. has been terminated effective October 2, 2014 as you did not meet contract requirements for the medical exam." (Doc. 36-3). A copy of the Medical Review Form was enclosed. (*See id.*).

At the time MVM terminated Keneipp, it knew that he was fully qualified and able to perform the essential functions of his duty as a CSO at all times through his date of termination. (Doc. 45 at 9 [Response to Plaintiff's Fact No. 3]). Although MVM's termination letter plainly informs Keneipp that his employment was terminated based on the medical issues presented in the Medical Review Form (*see* Doc. 36-3), MVM denies that it terminated him "because of the government physician's determination that [Keneipp] did not meet the USMS's CSO physical and medical standards." (Doc. 45 at 12). MVM now asserts that it terminated Keneipp's employment "because he could not work on the USMS contract, and [MVM] was not servicing any other contracts on which [Keneipp] could work." (*Id.* at 12-13). Keneipp alleges that he was terminated because his employer regarded him as disabled.

## II.     Summary Judgment Standards

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). "[S]ummary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for a nonmoving party." *Anderson*, 477 U.S. at 248. The courts thus determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251-52. The non-movant's evidence is taken as true, and all justifiable and reasonable inferences are to be drawn in the non-movant's favor. *Id.* at 255. The court may not weigh the evidence and may not credit the evidence of the party seeking summary judgment, while ignoring the evidence offered by the non-movant. *Tolan v. Cotton*, 134 S. Ct. 1861, 1866-68 (2014) (per curiam).

Both parties have filed for summary judgment, and the "[c]ross motions for summary judgment are to be treated separately; the denial of one does not require the grant of the other." *Christian Heritage Acad. v. Okla. Secondary Sch. Activities Ass'n*, 483 F.3d 1025, 1030 (10th Cir. 2007) (quoting *Buell Cabinet Co. v. Sudduth*, 608 F.2d 431, 433 (10th Cir. 1979)). "Even where the parties file cross motions pursuant to Rule 56, summary judgment is still inappropriate if disputes remain as to material facts." *Christian Heritage*, 483 F.3d at 1030 (citing *Atl. Richfield Co. v. Farm Credit Bank of Wichita*, 226 F.3d 1138, 1148 (10th Cir. 2000)).

### III. Analysis

#### A. ADA Standards

The ADA prohibits "discriminat[ion] against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). Discrimination can be proved through direct evidence or circumstantial evidence. *Khalik v. United Air Lines*, 671 F.3d 1188 (10th Cir. 2012). In the absence of direct evidence, the Court must analyze the evidence under the *McDonnell Douglas* burden-shifting framework. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973); *see also Morgan v. Hilti, Inc.*, 108 F.3d 1319 (10th Cir. 1997).

The *McDonnell Douglas* framework involves three steps: (1) Mr. Keneipp bears the initial burden of establishing a prima facie case of discrimination under the ADA; (2) the burden shifts to MVM to show a legitimate, non-discriminatory reason for the termination; and, (3) Mr. Keneipp must then show that "there is at least a genuine issue of material fact as to whether the employer's proffered legitimate reason is genuine or pretextual." *Smothers v. Solvay Chem., Inc.*, 740 F.3d 530, 538 (10th Cir. 2014); *see also McDonnell Douglas*, 411 U.S. at 802-03. If Keneipp meets the prima facie burden, then MVM must offer a legitimate, non-discriminatory reason for the employment action, which is a burden of production, not one of persuasion. *Smothers*, 740 F.3d at 539 (citing *E.E.O.C. v. Horizon/CMS Healthcare Corp.*, 220 F.3d 1184, 1191 (10th Cir. 2000)). To establish pretext, Mr. Keneipp must then show "either that a discriminatory reason more likely motivated the employer or that the employer's proffered explanation is unworthy of credence." *Id.* (quoting *Zamora v. Elite Logistics, Inc.*, 748 F.3d 1160, 1166 (10th Cir. 2007)). If "a plaintiff demonstrates that an employer's proffered reasons are 'unworthy of credence,' a jury may 'infer

the ultimate fact of discrimination.'" *Id*. at 546 (quoting *Swackhammer v. Spring/United Mgmt. Co.*, 493 F.3d 1160, 1167 (10th Cir. 2007)).

### B.     MVM's Motion for Summary Judgment

MVM argues that it is entitled to summary judgment because Keneipp cannot establish his disability claim. Keneipp's burden at the prima facie stage requires only a "small amount of proof necessary to create an inference" of discrimination or retaliation, by a preponderance of the evidence, and the burden is "not onerous." *Smothers*, 740 F.3d at 539 (quoting *Orr v. City of Albuquerque*, 417 F.3d 1144, 1149 (10th Cir. 2005)). To establish a prima facie case of discrimination under the ADA, a plaintiff must demonstrate (1) that he is disabled or perceived as disabled, as defined by the ADA, (2) that he is qualified to perform the essential functions of the job, and (3) that he was terminated "under circumstances which give rise to an inference that the termination was based on [his] disability." *Smothers*, 740 F.3d at 544 (citations omitted); *see also Hennagir v. Utah Dept. of Corrections*, 587 F.3d 1225, 1261 (10th Cir.2009); *Butler v. City of Prairie Vill..*, 172 F.3d 736, 748 (10th Cir. 1999); *Koessel v. Sublette Cty. Sheriff's Dep't*, 717 F.3d 736, 742 (10th Cir. 2013).

MVM admits that Mr. Keneipp was fully qualified to perform the essential functions of the job, such that the second prong of his prima facie case is satisfied (Doc. 45, p 9; Doc 36-1). With respect to the first prong, Keneipp claims that he was improperly perceived as disabled. The ADA defines disability as "(A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment (as described in paragraph (3))." 42 U.S.C. § 12102(1). An individual is "regarded as" having such an impairment "if the individual establishes that he or she has been subject to an action prohibited under this Act because of an actual or perceived physical

5

or mental impairment whether or not the impairment limits or is perceived to limit a major life activity." 42 U.S.C. § 12102(3)(A).

Initially, the Supreme Court narrowly construed the "regarded as" prong of the definition of disability, interpreting "regarded as" to "require a plaintiff to plead and prove that she was regarded as having an impairment that fit the terms of the first prong—that is, that she was regarded as having an impairment that substantially limited one or more major life activities." *Sutton v. United Air Lines, Inc.*, 527 U.S. 471, 489 (1999). Thus, a plaintiff was required to prove that his or her impairment substantially limited major life activities. *Adair v. City of Muskogee*, 823 F.3d 1297, 1305 (10th Cir. 2016). The ADA Amendments Act (ADAAA) was passed in 2008, abrogating *Sutton*. In the ADAAA, Congress stated its intention to expand the scope of the protection the Supreme Court had limited. *See id.* The ADAAA modified the "regarded as" claim by adding the phrase "whether or not the impairment limits or is perceived to limit a major life activity," to ensure broad coverage of defining a disability. 42 U.S.C. § 12102(3)(A). Under the ADAAA, a "regarded as" impairment "need not limit or even be perceived as limiting a major life activity—the employer need only regard the employee as being impaired." *Adair*, 823 F.3d at 1305. A plaintiff thus needs to plead and prove only that he was regarded as having a physical or mental impairment. *Id.* (citing *Mercado v. Puerto Rico*, 814 F.3d 581, 588 (1st Cir. 2016)).

Thus, "[u]nder the ADAAA, for a plaintiff alleging disability discrimination to show that the employer regarded him as having an impairment, the plaintiff must show that (1) he has an actual or perceived impairment, (2) that impairment is neither transitory nor minor, and (3) the employer was aware of and therefore perceived the impairment at the time of the alleged discriminatory action." *Adair*, 823 F.3d at 1306. In this case, Mr. Keneipp would need to show that (1) his back pain and sciatica are actual or perceived impairments, (2) those impairments were

6

not transitory or minor, and (3) MVM was aware of and therefore perceived the impairments at the time it terminated him. *See id.*

Mr. Keneipp has presented evidence from which an inference could be drawn that he was regarded as having such impairments. The FOH recorded his status as being "diagnosed with sciatica and chronic back pain" that prevented him from satisfying the CSO requirements. (Doc. 36-8). There is evidence that MVM adopted that reasoning as its own when it terminated Mr. Keneipp's employment. MVM's letter to Keneipp provides only one reason for discharge – the FOH physician's report – and attaches that report. (Doc. 36-8). While MVM now asserts that there were other reasons for terminating his employment, a reasonable jury could rely on the termination letter to find that Keneipp was terminated because he was regarded as having an impairment. Moreover, the chronic back pain and sciatica were not transitory or minor. A transitory impairment is "an impairment with an actual or expected duration of 6 months or less." 42 U.S.C. § 12102(3)(B). The Reviewing Medical Officer stated Mr. Keneipp could not "exercise on a treadmill for the *past year* due to *chronic* back pain." (Doc. 36-8) (emphasis added). This evidence supports Keneipp's claim that his back pain and sciatica were not transitory or minor.

There is also evidence that MVM was aware of and therefore perceived the impairments at the time it terminated Keneipp's employment. MVM's own letter attached the Medical Review Form as support for its decision to terminate Mr. Keneipp. That form cites impairments of sciatica and back pain, which purportedly medically disqualified him from being a CSO. (Doc. 36-3). Construed in favor of Mr. Keneipp and considering it in the light required at the prima facie stage, the evidence could support an inference that MVM was aware of and thus perceived the impairment at the time Keneipp was discharged. Mr. Keneipp has thus provided evidence supporting his claim under the "regarded as" impairment test. *See Adair*, 823 F.3d at 1306.

For the final prong of his prima facie case, Mr. Keneipp has to produce evidence that he was terminated "under circumstances which give rise to an inference that the termination was based on [his] disability." *Smothers*, 740 F.3d 530, 533 (10th Cir. 2014).  The Reviewing Medical Officer reported his perception that Mr. Keneipp had chronic back pain and sciatica which would prohibit him from performing.  USMS made its determination that Keneipp could not continue as a CSO because of the Reviewing Medical Officer's recommendation, and then USMS conveyed that decision to MVM and attached the Medical Review Form.  MVM then directly conveyed that to Mr. Keneipp as the reason for the termination of his employment.  The letters and Medical Review Form are evidence from which a reasonable jury could find that MVM terminated Mr. Keneipp under circumstances giving rise to an inference that he was terminated because of a perceived disability.

MVM argues that it had legitimate non-discriminatory reasons for terminating Mr. Keneipp, because (1) the USMS demanded Keneipp be removed and MVM could not override that decision because of its contract and (2) MVM had no other jobs on which to employ Keneipp. (Doc. 34 at 17 of 22).  As to the first argument, MVM asserts that it cannot be found to have discriminated against Keneipp because MVM did not have the authority to challenge the USMS's decision as to placement.  The Court recognizes the difficulty presented where the USMS had the contractual right to decline to further utilize Mr. Keneipp as a CSO.  However, the ADAAA does not permit MVM to utilize such a contract as a shield for any disability discrimination:

> [T]he term 'discriminate against a qualified individual on the basis of disability' includes-- . . . (2) participating in a contractual or other arrangement or relationship that has the effect of subjecting a covered entity's qualified applicant or employee with a disability to the discrimination prohibited by this title (such relationship includes a relationship with an employment or referral agency, labor union, an organization providing fringe benefits to an employee of the covered entity, or an organization providing training and apprenticeship programs).

42 U.S.C. § 12112(b)(2). In other words, an employer "may not do through a contractual or other relationship what it is prohibited from doing directly." *Fromm v. MVM, Inc.*, 371 F. App'x 263, (3d Cir. 2010) (unpublished) (quoting 29 C.F.R. pt. 1630, § 1630.6).

In *Fromm*, on appeal from summary judgment in favor of defendants, the Third Circuit remanded for the district court to determine whether "MVM is liable for 'participating in a contractual or other arrangement or relationship that has the effect of subjecting a covered entity's qualified applicant or employee with a disability to the discrimination prohibited by'" the ADA. 371 F. App'x at 271. In remanding, the court noted that "[i]f MVM, via its contract with USMS, has subjected [the plaintiff] to 'discrimination prohibited by [the ADA],' it cannot rest on blind contractual compliance to escape liability for discrimination." *Id.*; *see also Wise v. Akal Sec., Inc.*, No. 2005 WL 3487741 (although "the USMS imposed the medical screenings upon [the defendant] and its employees, [the defendant] is prohibited from relying upon the physician retained by the USMS and its contractual agreements with . . . the USMS . . . to avoid its ADA obligations.")

MVM's second argument – that Mr. Keneipp "was terminated because . . . MVM was not servicing any other contracts on which Mr. Keneipp could work" (Doc. 34 at 17 of 22) – was not communicated in MVM's letter of termination. The letter of termination could be read as conveying only one basis for terminating Keneipp's employment, which was the medical form referring to Keneipp's back pain and sciatica. Thus, a reasonable jury could infer from the letter that such a reason is unworthy of credence, so as to establish pretext. *See Smothers*, 740 F.3d at 539, 546. The evidence presented by the parties presents an issue of fact precluding summary judgment on the disability claim.

  **C. Keneipp's Motion for Summary Judgment**

   **1. Issues in Plaintiff's Case**

Mr. Keneipp seeks summary judgment on specific issues as to his claim of disability discrimination: "that he was qualified to work as a CSO; that he was regarded as having an impairment, sciatica / back pain; and that he was terminated because he was regarded as having an impairment." (Doc. 36 at 1). MVM has not disputed that Keneipp was qualified to work as a CSO, and it has represented that it will not take a contrary position in this case. (*See* Doc. 45 at 9 of 30). The parties have also filed a written stipulation that MVM will not argue that Keneipp "was not medically qualified to perform as a CSO under the Contract was proper, or that any other medical disqualifications by the USMS under the Contract were proper." (Doc. 30). The Court contemplates that the jury will be instructed that the parties have stipulated that Keneipp was qualified as a CSO. The parties may submit proposed instructions as to that point. In light of the parties' written stipulation, the Court considers the entry of judgment for one party on that element of his disability claim to be unnecessary.

  While Mr. Keneipp has presented sufficient evidence to support a prima facie case that he was terminated because he was regarded as having an impairment, the ultimate determination of that claim presents an issue for the jury, because MVM has asserted that it terminated Keneipp not because of any perceived disability, but because MVM was servicing no other contracts on which Keneipp could work. While the Court noted above that an inference of pretext could be drawn from MVM's termination letter, the reason for MVM's decision is ultimately an issue of credibility and fact for the jury, which also prevents summary judgment for plaintiff on his disability claim.

### 2. Business Necessity Defense

Mr. Keneipp also seeks summary judgment on MVM's business necessity defense. MVM expressly stipulated, in writing, that its "affirmative defense of business necessity is based solely on the written contractual provisions . . . with [the USMS]" and "that it will not argue as part of its business necessity defense that the USMS's determination that Plaintiff was not medically qualified to perform as a CSO under the Contract was proper, or that any other medical disqualifications by the USMS under the Contract were proper." (Doc. 30). Having so limited that defense by stipulation, the Court concludes that Mr. Keneipp's motion for summary judgment as to that defense should be granted, as there is no genuine dispute of material fact.

Business necessity is an affirmative defense set out in the ADAAA. To succeed on the affirmative defense, an employer "must prove that the pertinent qualification standard is job-related and consistent with business necessity." *Allmond v. Akal Sec. Inc.*, 558 F.3d 1312, 1316-17 (11th Cir. 2009); *see also* 42 U.S.C. § 12112(b)(6). This burden is quite high. *Allmond*, 558 F.3d at 1316-17. Job-relatedness and business necessity are not the same but are distinct pillars of the defense, and the employer must meet both of them. *Id.* "Job relatedness is used in analyzing the questions or subject matter contained in a test or criteria used by an employer in making hiring or promotional decisions." *Id.* at 1317 (quoting *Hamer v. Atlanta*, 872 F.2d 1521, 1533 (11th Cir. 1989)). Business necessity "is larger in scope and analyzes whether there is a business reason that makes necessary the use by an employer of a test or criteria in hiring or promotional decision making." *Id.* Because MVM has stipulated that its business necessity defense is limited to the contract with USMS and not the medical qualifications used by USMS, it cannot meet either of these criteria for the defense. As discussed above, an employer is prohibited from escaping liability based solely on a contract with another. Summary judgment on the defense of business

necessity is granted in favor Mr. Keneipp, and MVM cannot argue business necessity with regards to the contract. That defense will not be presented at trial.

### 3. Mitigation

Mr. Keneipp seeks summary judgment on the defense of failure to mitigate, arguing that MVM has no evidence that plaintiff failed to mitigate damages. To prevail on a defense of failure to mitigate, MVM must ultimately establish "(1) that the damage suffered by plaintiff could have been avoided, i.e. that there were suitable positions available which plaintiff could have discovered and for which he was qualified; and (2) that plaintiff failed to use reasonable care and diligence in seeking such a position." *E.E.O.C. v. Sandia Corp.*, 639 F.2d 600, 627 (10th Cir. 1980). Upon a review of the record and the parties' arguments, the Court has determined that there are genuine disputes between the parties as to whether Mr. Keneipp made reasonable efforts to seek subsequent employment and whether there was a position available for which Mr. Keneipp was qualified and which he could have discovered. For example, the defendant has presented evidence that Mr. Keneipp ceased reasonable efforts to obtain employment once his unemployment benefits expired and that he declined a part-time job at the Broken Arrow Police Department. (*See* Doc. 45-10 at 4-8 of 11 [Dep. pp. 45-49]). Summary judgment is denied on this issue.

### IV. Conclusion

For the foregoing reasons, MVM's motion for summary judgment (Doc. 34) is **denied**, and Keneipp's motion for partial summary judgment (Doc. 36) is **granted in part** (as to the business necessity defense) and **denied in part** (as to all other issues presented in Keneipp's motion).

SO ORDERED this 27th day of July, 2017.

JOHN E. DOWDELL
UNITED STATES DISTRICT JUDGE